**Michael S. SNISKY, Petitioner,**

v.

**PENNSYLVANIA STATE POLICE, and Background Investigation Appeal Panel of Pennsylvania State Police, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 8, 2002.

Decided June 5, 2002.

6. Act of July 28, 1953, P.L. 723 *as amended,* 16 P.S. §§ 3101–6302.

Richard L. Orloski, Allentown, for petitioner.

Joanna N. Reynolds, Harrisburg, for respondent.

Before COLINS, President Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

Opinion By President Judge COLINS.

Snisky filed a petition for review of the of a decision of the Background Investigation Appeal Panel (Appeal Panel)[1] of the Pennsylvania State Police disqualifying him as a candidate for appointment as a Pennsylvania State Police Cadet because of an alleged altercation with his wife and immature conduct.

The issue on appeal is whether a candidate for appointment as a Pennsylvania State Police Cadet has a sufficient personal property right in employment, which would require a hearing before disqualification and would further allow an appeal

from a decision by the Pennsylvania State Police to the Commonwealth Court.

On August 7, 2000, Snisky was notified that he had successfully completed the background investigation phase in his processing for the position of Pennsylvania Police Cadet. He was informed that in order to receive an offer of employment, he would have to successfully complete medical and psychological evaluations. By letter dated January 9, 2001, he was informed that he was selected for appointment to the position of State Police Cadet with a starting date on March 12, 2001.

On January 14, 2001, a domestic disturbance was reported at the Snisky residence. In the police report, the police officer noted that Mrs. Snisky was bleeding from the nose. According to the officer, Mrs. Snisky stated that her husband threw a telephone at her, but she did not want to press any charges. Mrs. Snisky later submitted an affidavit describing the phone incident as an accident.

On January 29, 2001, Snisky received a letter stating that his appointment was rescinded as a result of a domestic violence incident involving Snisky and his wife. The letter stated that a supplemental background investigation would be initiated to review the incident. On March 23, 2001, the Pennsylvania State Police Director, Bureau of Personnel notified Snisky that a Background Investigation Screening Panel (Screening Panel) disqualified him as a Cadet. The reasons given for disqualification included Snisky's altercation with his wife and an incident in which he allegedly threw his children's ice cream cones out the window of his vehicle. In concluding, the Screening Panel stated, "It would not be prudent to hire him knowing that the potential for this type of

---

1. Snisky received letters from the Pennsylvania State Police dated March 23, 2001 and June 29, 2001, informing him that he had been removed from the 2000 Cadet Eligibility List and disqualified as a candidate.

behavior exists." (Pennsylvania State Police letter dated March 23, 2001). The letter also informed Snisky that he could submit a written rebuttal/appeal.

Snisky requested a hearing and submitted a written rebuttal in a letter dated March 30, 2001. According to Snisky, he and his wife got into an argument upon leaving church. After a few hours, this argument was rekindled. He stated that when he went to make a phone call, his wife grabbed the telephone from him, which caused the telephone to hit her nose. Mrs. Snisky then called her parents, who heard the argument and informed the police.

In response to Snisky's written rebuttal, on June 29, 2001 the Pennsylvania State Police Director, Bureau of Personnel informed Snisky that the Appeal Panel reviewed his background investigation report, the disqualification factors, and his written rebuttal. The Appeal Panel found that there was no new evidence that would reverse the decision of the Screening Panel.

Snisky argues that prior to disqualification, the Pennsylvania State Police must allow him to be heard and present evidence. He cites *Bloomfield v. Pennsylvania State Police*, 154 Pa.Cmwlth. 626, 624 A.2d 683 (1993), wherein this Court stated that the consent decree entered into in *Bolden v. Pennsylvania State Police*, Civ.A. No. 73–2604, 1999 WL 80289 (E.D. Pa., June 20, 1974), *modified*, 73 F.R.D. 370 (1976), established that an applicant for a State Police position has a right to a hearing before his interest can be terminated by agency adjudication. Snisky argues that he was never afforded this right. He maintains that the Appeal Panel neglected to interview him and his wife, and no investigation actually occurred.

In opposition, the Pennsylvania State Police argues that Snisky cannot appeal his disqualification because the removal of his candidacy is not an adjudication, and therefore, not reviewable by this Court. The Pennsylvania State Police argues that Snisky was not entitled to appeal his disqualification to the Commonwealth Court because the decision to disqualify a probationary Cadet did not constitute an "adjudication" as defined in the Administrative Law. An adjudication is defined in relevant part as:

> [A]ny final order, decree, decision, determination of ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceedings in which the adjudication is made.

2 Pa.C.S. § 101. Accordingly, Snisky's disqualification must have been an "adjudication" in order to entitle him to appeal to this Court signifying that his disqualification affected a personal or property right, privilege, or immunity. *Pipkin v. Pennsylvania State Police*, 548 Pa. 1, 693 A.2d 190 (1997).

The Pennsylvania State Police maintains that the Appeal Panel's ruling was not an adjudication because it did not affect any "personal or property rights, privileges, [or] immunities" enjoyed by Snisky. The Pennsylvania State Police also notes that while this Court previously held that a Pennsylvania State Police Screening Board's notification of disqualification was an adjudication in *Bloomfield*, this decision was based on the selection procedure outlined in the Bolden Consent Decree, which is now dissolved and inapplicable.

Upon review of the relevant case law, we agree with the Pennsylvania State Police. In *Marino v. Pennsylvania State Police*, 87 Pa.Cmwlth. 40, 486 A.2d 1033 (1985), this Court declined to find that cadets had a property right to continued employment

with the Pennsylvania State Police so that their discharge without a hearing did not violate due process rights. In *Marino,* two cadets were dismissed after being accused of cheating on examinations. For the cadets to show that their due process rights were violated by not getting a hearing before being dismissed, they had to show that they had a property interest in continued employment with the Pennsylvania State Police. The court held that a cadet, while having "some interest" in continued employment, was not entitled to a similar hearing given to a non-probationary officer because a cadet's interest was not "substantial." *Marino,* 486 A.2d at 1034.

Similarly, in *Graham v. Pennsylvania State Police,* 160 Pa.Cmwlth. 377, 634 A.2d 849 (1993), *petition for allowance of appeal denied,* 538 Pa. 660, 648 A.2d 791 (1994), Graham, a former cadet in training to become a Trooper was expelled for disciplinary infractions. Hearings were held before a hearing officer who recommended that Graham not be dismissed. The Commissioner rejected these recommendations and sustained Graham's dismissal from the Police Academy. She appealed her dismissal to Commonwealth Court. The Court, citing *Marino,* found that it lacked jurisdiction to hear Graham's appeal because she did not have a property right in her employment as a Pennsylvania State Police Cadet. *See also Pipkin* (dismissal of a probationary state trooper was not an adjudication and the trooper was not entitled to due process protections or the right to appeal the dismissal to the Commonwealth Court.)

Snisky distinguishes *Graham* and *Pipkin,* arguing that in each of these cases, the plaintiffs were provided with a hearing. Although in the case before us, unlike the *Graham* and *Pipkin* cases, no hearing was held, we agree with the Pennsylvania State Police that Snisky had no property rights as a candidate for a Pennsylvania Police Cadet. We have consistently rejected the idea that a *probationary state trooper* has a property interest in continued employment with Pennsylvania State Police.

If a probationary trooper has no property interest in continued employment, it must follow that an applicant, who has made the eligibility list but who has not yet commenced his service at either the Academy or as a probationary trooper, has no vested property rights. Without such a right, Snisky's disqualification does not constitute an adjudication reviewable by this Court.

Accordingly, we dismiss Snisky's appeal for lack of jurisdiction.

### ORDER

AND NOW, this 5th day of June 2002, we dismiss Petitioner's petition for review for lack of jurisdiction.

KELLEY, Judge, Concurring.

I concur in the result reached by the Majority. All of the cases cited by Snisky, to support the proposition that the determination of the Background Investigation Appeal Panel is an appealable "adjudication", recognize that any right to appeal from such a determination is a personal right conferred under the consent decree entered into in *Bolden v. Pennsylvania State Police,* No. Civ. A. 73–2604 (E.D. Pa., June 20, 1974), *modified,* 73 F.R.D. 370 (1976). As the consent decree has been dissolved, *see Bolden v. Pennsylvania State Police,* No. Civ. A. 73–2604 (E.D.Pa., February 1, 1999), the Appeal Panel's determination in this case is not an appealable "adjudication".

I write separately, however, to express the view that *if* this determination were reviewable, I would not hesitate to argue

for its reversal. Pursuant to Section 710(f) of the Administrative Code of 1929[1], the Pennsylvania State Police is invested with the power and duty "[t]o collect and classify, and keep at all times available, complete information useful for the detection of crime, and the identification and apprehension of criminals ..." And yet, in conducting a background investigation into one of its own potential cadets, neither the Background Investigation Screening Panel nor the Background Investigation Appeal Panel spoke with the principals involved in the purportedly disqualifying incidents. One can only hope that this is not indicative of the majority of the investigations conducted by the Pennsylvania State Police.

---

1. Act of April 9, 1929, P.L. 177, *as amended,*   71 P.S. § 250(f).