**PENNSYLVANIA STATE POLICE, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2000.

Decided Dec. 12, 2000.

Frank A. Fisher Jr., Harrisburg, for petitioner.

Jennifer E. Will, Harrisburg, for respondent.

Anthony Caputo, Harrisburg, for intervenor, PA State Troopers Assoc.

Before SMITH, Judge, LEADBETTER, Judge, and RODGERS, Senior Judge.

RODGERS, Senior Judge.

The Pennsylvania State Police (Commonwealth) appeals from the final order of the Pennsylvania Labor Relations Board (PLRB or Board), entered December 21, 1999, which determined that the Commonwealth committed an unfair labor practice when it unilaterally ceased to provide pretermination hearings for probationary troopers facing dismissal.[1] We reverse.

The facts of this matter are not in dispute. The State Troopers Association (Association) is the recognized bargaining agent for state troopers of the Commonwealth's Police Department, including probationary troopers. Trooper Gerald T. Devlin (Devlin), a probationary trooper, was involved in an auto accident in March 1998 in which the driver of the other vehicle was killed. As a result of that accident, the Association, the Commonwealth and Devlin agreed to extend Devlin's probationary status, due to end May 1998, until September 1998. On August 26, 1998 Devlin was dismissed without any review procedures and without a hearing.[2] Similarly, in May 1998, another probationary trooper was dismissed for medical reasons also without any pretermination process.

Prior to this time, from sometime in 1984 until 1995, Probationary Trooper Review Panel hearings (PTRP hearings) were convened on occasion to determine whether the Commonwealth would retain a probationary trooper. Sometime in 1993, as a result of negotiations between senior Commonwealth police officers and officers of the Association, the PTRP hearings were changed to include disciplinary matters that could result in termination of the probationary trooper(s).

Sometime in 1995, the Commonwealth unilaterally terminated the practice of utilizing the PTRP hearings to determine whether a probationary trooper would be retained. After the Association filed a complaint with the PLRB in 1995, the parties settled that case by entering into a letter of agreement (the Burns and Shade agreement). (RR.188a–190a). According to the terms of the Burns and Shade agreement, PTRP hearings were conducted and continued from 1995 until January 1998. The Commonwealth reserved "any right it possesses to modify or discontinue" the PTRP hearing process with the "express understanding that the Association does not recognize or acknowledge such a right and may challenge any such unilateral change." (RR.195a).

The Association filed its challenge with the PLRB on August 28, 1998 when the Commonwealth stopped providing PTRP hearings to probationary troopers. The Association charged the Commonwealth erred by unilaterally modifying existing terms and conditions of employment. The Board agreed and in its final order concluded that PTRP hearings bear a rational relationship to probationary troopers' duties. *City of Clairton v. Pennsylvania Labor Relations Board*, 107 Pa.Cmwlth. 561, 528 A.2d 1048 (1987) (city's unilateral

---

1. The Board decided the Commonwealth was in violation of Sections 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.6(1)(a) and (e), and also in violation of the act commonly known as Act 111, Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10.

2. Though a hearing was scheduled in June 1998, it was cancelled and never rescheduled.

action to remove certain duties from police responsibilities was bargainable where city's action bears a rational relationship to police duties). The Commonwealth appeals to this Court.[3]

The PLRB relies on *Plumstead Township v. Pennsylvania Labor Relations Board,* 713 A.2d 730 (Pa.Cmwlth.1998) (under PLRA once an issue is determined to be mandatory subject of bargaining, employer barred from acting unilaterally). However, *Plumstead* can be distinguished. There, this Court affirmed the PLRB when it decided the employer unilaterally rescinded a policy permitting police officers to take home marked police cars. Because police officers, be they on or off duty, are required to take police action when they see a life-threatening situation, we determined retaining the police car assisted those police officers in carrying out their duties.

Here, the PLRB makes circuitous arguments in its attempts to show the rational relationship between probationary troopers' opportunity to defend themselves prior to termination and the terms and conditions of their employment. There is no rational relationship. *Pipkin v. Pennsylvania State Police,* 548 Pa. 1, 693 A.2d 190 (1997). In *Pipkin,* our Supreme Court found probationary troopers did not have a property right in continued employment with the Commonwealth. Noting that there are widely divergent procedures for dismissing a state trooper who has successfully completed his probationary procedures, the *Pipkin* Court held the dismissal was not an adjudication and the trooper was not entitled to due process protections or the right to appeal the dismissal to the Commonwealth Court.

The collective bargaining agreement (CBA) between the Commonwealth and the Association includes probationary troopers. Nevertheless, Section 205(f) of the Administrative Code of 1929[4] grants the Commonwealth's State Police Commissioner discretion to dismiss a probationary trooper. Thus, the Commonwealth's unilateral cessation of PTRP hearings was not a bargainable issue. The probationary troopers were not entitled to such hearings and stopping the PTRP process was not a change in the terms and conditions of those troopers employment.

We are also guided by the case of *Upper Makefield Township v. Pennsylvania Labor Relations Board,* 562 Pa. 113, 753 A.2d 803 (2000). There, our Supreme Court held that nothing in that CBA, between the township and its non-probationary police officers, refutes the at-will status of probationary officers, nor does Act 111 explicitly define police and firefighters to include probationary employees.[5] Reviewing the legislative intent set forth in Section 812 of the act commonly known as the Police Tenure Act,[6] the Supreme Court observed the Police Tenure Act explicitly excluded probationary officers from the constraints placed on certain employers concerning removal of those officers.[7]

The *Upper Makefield* Court opined that, implicit in the term 'probationary', is that the employee is being tested for the job

3. Our scope of review is limited to determining whether there was a constitutional violation or an error of law, and whether the PLRB's necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Pennsylvania State Troopers' Association v. Pennsylvania Labor Relations Board,* 671 A.2d 1183 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 545 Pa. 657, 680 A.2d 1164 (1996).

4. Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 65(f).

5. The Supreme Court has held that Act 111 must be read *in pari materia* with the PLRA, and it is the essence of collective bargaining that parties are free to bargain for advantages in exchange for concessions. *Plainfield Township Policemen's Association v. Pennsylvania Labor Relations Board,* 695 A.2d 984 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 549 Pa. 730, 702 A.2d 1062 (1997).

6. Act of June 15, 1951, P.L. 586, *as amended,* 53 P.S. §§ 811–816.

7. Though applicable in the *Upper Makefield* situation, the Police Tenure Act, governing as

and the relationship is strictly "at-will" between employer and employee during this period. The Court held that a probationary police officer is not entitled to appeal his dismissal as the protections of Act 111 cover only those who have satisfactorily passed their probationary period. Unless the terms of an officer's probationary period *specifically* grant him avenues of redress, the relationship is terminable by either side during the probationary period.

In this situation, the probationary troopers have no right to a PTRP hearing either by contract or statute. Though there has been, sporadically, a past pattern and practice of holding such hearings, the Commonwealth reserved the right to unilaterally cease that practice and did so.

Accordingly, we reverse the decision of the PLRB.

Judge SMITH concurs in result only.

### ORDER

NOW, December 12, 2000, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is reversed.

it does police officers in certain boroughs and townships with a certain number of police officers, is inapplicable here. Nevertheless, the *Upper Makefield* Court observed that the

distinction of probationary policemen comports with the Court's position in *Pipkin*. *Upper Makefield*, 562 Pa. at 119, 753 A.2d at 807.